Thank you, Your Honors. My name is David Ness with the Federal Defenders of Montana, and I represent the appellant, Mr. Clement King. This case is on appeal following a remand. It was first reversed for procedural error, and when it went back, the District Court judge sentenced Mr. King to the same sentence, 365 months, which represented 175 months on Count 1 for sexual abuse and 190 months on Count 2 for the child pornography. Both this Court and the United States Supreme Court has noted that when you look at a variance, in determining the reasonableness of the sentence, you should look at the extent of the variance. That's one of the considerations that should be taken into account. Now, there's several ways you can look at the extent of this variance. The sentence of 175 months on Count 1 was roughly a six-fold increase from the recommended guideline range of that sentence of 30 to 37 months. The variance on Count 2 was roughly three to four years. If you would have run them consecutively, it would have been roughly 12 to 13 years higher than what the top end of those two guideline ranges combined would have been. And when they were grouped, that was the issue that was reversed on. It was roughly twice the top end of that guideline range. In arguing substantive reasonableness, we pointed out a number of things that we think points to the district court's mistaken conclusions in the way that he justified this really extreme variance. The government has argued that those should be considered as procedural error, and because we didn't object on procedural error grounds, that should be reviewed for plain error. I would point out, especially in the United States v. Racine, where the government explicitly disavowed that it was relying on any sort of procedural error. This court, nevertheless, sitting on bonk, went through and they examined things like how the court looked at the nature and circumstances of the offense and the defendant's background and characteristics. Mr. Ness, one of the things that struck me in looking at the statements that the district court made during sentencing was that he went to some length to examine all of the 3553A factors and to describe why he felt that this extraordinary sentence was warranted. Our decision in Carty and Zavala basically says that district judges need to explain why they are departing so that it permits meaningful appellate review. Is your challenge here to the fact that he didn't adequately explain why he chose the sentence that he did? Is there something more that he should have said that is not apparent to us in the record? I take the question to mean are we making some sort of procedural argument that he didn't explain it well enough? Well, I guess what I'm saying is we review for abuse of discretion, and the only way we can do that is to determine whether or not he has adequately articulated the reasons why he fashioned the sentence the way that he did. And it looked to me, because of the fact that it was there on remand from a prior reversal by our court, that the sentencing judge here was quite careful to go through and explain all of the, I'll call them aggravating factors that caused him to believe that to protect the public from a dangerous and recidivist offender who apparently he'd been handling over some period of years since he'd sentenced him, what, seven years earlier? Sentenced him back in 2001. I mean, I guess if I can kind of cut to the chase, he was looking at two psychosexual evaluations that had previously been completed on your client, and he'd ordered a third, but for whatever reason, Fifth Amendment or whatever, the client had declined to participate in it. But those evaluations recount sexual molestation of victims as young as seven months and repeated acts of abuse of children throughout the period, and then conclusions by the examiners that he's not amenable to treatment, that he's dangerous. And then the district court concluded, I don't know what else to do with you other than to warehouse you to protect future victims. And you're asking us to determine whether or not that was a reasonable sentence under Muhammad, and that's why I ask, what more does the district court need to do when it makes those kind of express findings to justify what is clearly a very long prison sentence for a young offender? Well, maybe a couple of things. I disagree particularly with the court's characterization of the earlier juvenile evaluations as showing he's not amenable to treatment. I represented Mr. King back then. I didn't represent him in this case, but I did back then. And that really wasn't what they said. They said this is a kid that has a lot of problems. They recounted the horrendous abuse that had been perpetrated upon him. When he went to the normative school, normative place where he was taken out as a juvenile by this judge and put into jail for nine years or whatever, he was starting to do well there. There was also an evaluation done that I had done that was used in that juvenile case that showed a lot of his problems had to do because he'd been so harshly abused as a very young person and that he wasn't amenable to treatment. I think that the judge there was trying to blame others for his situation. No, I'm not sure where the judge got that. I'm just saying that's what the judge's characterization was, wasn't it? Right. And the judge at the sentencing hearing here said you continue to blame everyone except yourself. And even if you look at Mr. King's elocution, he didn't say that. He said, you know, in a way I'm glad I'm being put away because I need it and I don't want to do something worse. I don't understand where the judge got that. Let me ask you, counsel, just one record question. If the Ninth Circuit had affirmed the initial sentence, the juvenile case, rather than vacated the sentence, he would have been incarcerated at the time that this act in question, this new case occurred. Is that correct? That is correct. My other question is that, as I understand, the stat max for these crimes, if you put them consecutive, was 55 years. Yes. So about 660 months. Yes. The sentence here was about, I don't know, 60% of that, doing the math in my head. What role does the statutory maximum play when we're addressing the issue of substantive reasons? I mean, that certainly comes into play when you're looking at the sentencing guidelines because that's one of the considerations that the court has to take into account, the kinds of sentences available. But then, of course, the guidelines were enacted to try to tell the courts where within, say, zero to 20 years or something courts should impose a sentence. And so the flip side of the coin in considering the statutory maximums is that you also have to consider disparity. And if you're sentencing someone up to the very, you know, to the statutory maximum and others are getting substantially less than that, then you're going to run into problems with disparity. But we can consider the fact that Congress thought at least for some person who committed these crimes should get 55 years. There's someone out there that would get that. Yes, I would concede that. Somewhere in the realm of possibilities, yes, but not this defendant. Do you want to save your remaining time? Good morning, Your Honors. May it please the Court, my name is Chris McLean. I'm an assistant U.S. attorney in Missoula, Montana, and represent the United States in this case. Really what we're trying to examine in this appeal is whether Judge Haddon's sentence of the defendant was substantively reasonable. It's the government's position that this is not one of those cases where this court will exercise its judgment in contradiction to the district court. It's not one of those rare cases where a defendant shows that the district court was substantively unreasonable. As we have already discussed today, the sentence rendered by the district court was approximately double the sentencing guideline range calculated by the court at the resentencing. The defendant did not object to that guideline range. And the only objection registered by the defendant at the sentencing was that we feel that the sentence should have been within the guideline range. And so I think it's fair to say that we are looking at the substantive reasonableness standard of review. The government had urged 240-month sentence, correct? Yes, ma'am. And at sentencing said this was reasonable in light of everything that had happened in light of the guidelines and the kind of conduct that the guidelines take into account. Now you're standing here and saying, well, actually, 365 months is substantively reasonable. And I think, you know, from the government's perspective, 240 months would have been a reasonable sentence, but it can't be determined that the district court abused its discretion in imposing a 365-month sentence. You know, there's a range of reasonable sentences available to the district court. Well, what about the disparities? There were several cases that Mr. King's counsel cited, and I'm not sure that you or the district court really dealt squarely with that, that there are, in fact, sentence disparities given other cases for much more, I would call, extreme conduct on the part of the defendant and the sentencing considerably lower. I think in this case, while in those cases it may have been isolated incidents, one incident, maybe a couple incidents of sexual deviance, in this case we've got a defendant who from the age of 13 to when he's sentenced at age 25 has experienced, as written by Dr. Stratford, the characteristics of deceitfulness, repetitive lying, impulsivity, aggressiveness, lack of remorse, indifference to victims, minimizing his harm throughout, and in fact was diagnosed as having an antisocial personality disorder that was incurable. I think that sets this case apart from the cases relied on by the defense. One of the cases he points to there was a long-term relationship with a 13-year-old. I mean, that's a long-term longitudinal deviancy, which you're suggesting here, that person gets 87 months. So I guess one of the questions I have is since it didn't seem that this factor was really taken into account and you need to take a look at that in terms of determining substantive reasonableness, don't you? Well, I think Judge Haddon looked at, with respect to this particular defendant, that when he was 13 years old he was having sex with a 7-month-old, his male cousin, and other instances. As soon as he's released almost from custody, he is taking this to the 15-year-old, dating her pregnant, and at the same time convicted of raping a separate 13-year-old female and trying to purchase child pornography on the Internet. It's a very extreme demonstration of antisocial behavior that Judge Haddon was, in effect, trying to protect the community against and imposing this sentence. And it really can't be said that he exercised or made a clear error of judgment in imposing a 365-month sentence against this particular defendant. Was it the 15-year-old wife that had obtained the permanent restraining order against him because she was afraid that he would molest the child? Your Honor, I'm not sure. I believe so. There is a reference in the record to a State District Court judge issuing a permanent restraining order and comments by one of the women that he had relations with that she was afraid he would hurt her child. That may have been her. You can see the timing. March 2008 is when he's caught by the 15-year-old mother of his child, trying to buy child porn on the Internet. May 2008, he rapes the 13-year-old out in the woods. And then in August 2008, he breaks up with his girlfriend and is finally indicted in June 2010. So there's this series of events that's laid out in the record in this case that shows Judge Haddon's understanding of the facts. And when this particular defendant adds clear and present danger to the community in developing the sentence that he rendered in this case. If the Court has no further questions, I will yield the remainder of my time. Thank you very much, Your Honor. Thank you. Thank you. Thank you. I guess a couple of things. I wish it would have been pointed out in this go-around, but it wasn't. All of the references to the 7-month-old infant, that was not, as I recall, allegations of sexual abuse towards that infant. There was an allegation that he may have poked the infant with a pin. And during the juvenile proceedings, we objected to that. And as I recall, Judge Haddon then said he wouldn't consider that in imposing sentence during the juvenile proceedings. But now he's got a defendant who is back for more sexual offenses involving young women and child pornography, and there isn't any objection made at the time of sentencing. And he's looking at all of that evidence. I'm not quite sure what your point is. Well, it just keeps coming up he molested a 7-month-old infant. I mean, if true, that's horrible. If it were only the 7-month-old, but the record is replete with – I lost count of the number of victims. I'm not sure he knows how many people he's molested over the years. When he was 12 years old, after he'd been horribly, horribly sexually abused, there was some – yes, he perpetrated on some cousins of his, I believe. The 13-year-old, it was a statutory rape, no doubt about that. But as Judge McKeown was pointing out, some of these other cases are far more egregious. He was 20. She was close to 14. In all other ways, the way that the victim of that testified, it was consensual. They drove up together. They were kissing. She got into the back of the car with him. She even testified that as she got upset, he stopped. Again, Mr. Ness, that's the offense that brings him before the court this time. But he's looking at a long history of recidivism by an offender who is diagnosed as antisocial and who he makes a finding is, based on those reviews, is not amenable to treatment and is therefore a danger to the community. I'm struggling to find a reason why I can declare that to be an abuse of discretion as substantively unreasonable when the district court went to such lengths to lay out all the concerns that it had in trying to fashion an appropriate sentence. If I could make just three quick points to that. One, substantive review assumes that the court, and as happened in Rassam, that judge went to great lengths to explain why he was imposing that sentence. Probably more than what Judge Haddon did, this Court still reversed. So substantive review doesn't necessarily consider whether or not there was procedural error, and I just respectfully want to say that. But what's the justification for the reversal, that this just strikes us as too long in relation to sentences that have been imposed on other offenders? Is that the best justification? Well, compared to Mr. Overton, who was a recidivist, who had sex with a stepdaughter, took pictures of him, the defendant in Shulls, who I represented, who had sex with his natural daughter repeatedly took pictures. Was Overton the guy? I seem to remember that case. Was Overton the one with the 16-year-old daughter? I believe, I think she was 15, 16 years old. I think I was on that panel because I remember the facts. It was pretty, I mean, those were pretty bad. But one victim. Well, but he was a recidivist, and that was, I mean, remember that. He was a recidivist, and he's quite a bit older than Mr. King. And I believe he also had child porn, as did Mr. Shulls. Overton was actually manufacturing the pornography. He was taking pictures of his daughter and then putting them on the Internet. Right. And then just with respect to Dr. Stratford's report, I don't know that it's necessarily accurate to say he diagnosed Mr. King. I don't know if he could diagnose Mr. King. He never saw Mr. King. Well, I thought he looked at the two previous psychosexual evaluations trying to piece together a report that Judge Haddon had asked for when he ordered the third psychosexual evaluation. He did review a number of records, and his conclusion was, yes, I mean, here's what we call, here are the characteristics of an antisocial personality. I mean, it's the standard DSM, whatever it is now, 3, 4, 5, I've lost track of the volumes. But I think DSM-5 diagnosed him. Right. And I guess my only point is I don't know that he can diagnose if he doesn't ever talk to the person. Well, yeah. That's a point that is always made, but we do have doctors typically reviewing records to determine and doing the summaries. So thank you. Thank you very much. Appreciate both of you coming from Montana. United States v. King is submitted.
judges: McKeown, Tallman, Owens